[No. 24004. Department One. December 22, 1932.]

STEPHEN TWEDT, *Appellant,* v. GEORGE SIVERSON, *Defendant,* AETNA CASUALTY & SURETY COMPANY, *Respondent.*[1]

*M. H. Forde (G. F. Cook,* of counsel), for appellant.
*J. Speed Smith* and *Henry Elliott, Jr.,* for respondent.

MITCHELL, J.—George Siverson, doing business under the name of West Waterway Boat Yard, on or about July 21, 1928, entered into what, upon its face, purported to be a contract to construct for Stephen Twedt a boat forty-two feet long over all for $3,250, to be paid by installments during construction work, the last payment to be made upon completion and acceptance of the boat. The parties were friends, and related by marriage. Thereafter, under date of July 24, 1928, Siverson, as principal and the Aetna Casualty and Surety Company, a corporation, as surety,

[1]Reported in 17 P. (2d) 43.

made and delivered to Twedt as obligee a common law form of bond in the sum of two thousand dollars, conditioned for the due performance of the contract to build the boat. Thereafter, Twedt brought this action on the bond against the principal and surety, alleging a breach of the contract to build and deliver the boat, on account of which damages in the sum of two thousand dollars were alleged, for which judgment was demanded.

The Aetna Casualty and Surety Company appeared and answered separately, denying generally the allegations of the complaint, and affirmatively alleging that the contract to build the boat to which the bond referred was not entered into in good faith. The allegations in this affirmative answer were denied by the plaintiff's reply. The record does not show any proof of service upon, nor appearance by, Siverson, although he testified at the trial of the issues between the plaintiff and the surety company. The trial resulted in a directed verdict in favor of the surety company. The plaintiff has appealed from a judgment on the verdict.

There is no dispute about the controlling facts in the case. They were testified to by both the appellant and Siverson. No other witness knew anything about those facts.

The real contract between Twedt and Siverson was made on the occasion of a funeral that both of them attended, some time before the date of the written contract and the bond in suit. It was an oral contract by which Siverson was to build the boat and sell it, and out of the proceeds pay Twedt $450 already owing to him by Siverson and $3,250 to be furnished by Twedt for the costs of construction. Twedt gave him $1,000 at that time, and later, after the bond sued on was executed, he furnished $900, and then $40, and there-

after failed or refused to furnish any more, saying he did not have the means to do so. Nevertheless, Siverson finished the boat, sold it to a stranger, and failed to pay Twedt anything; and more than a year later this suit was brought.

Twedt, under cross-examination, testified:

"Q. Now, what did Mr. Siverson say to you about how this boat could be sold, how to get the money out of the boat? A. Well, Mr. Siverson proposed at that time out there at the cemetery if I would advance the money on the boat he would see if he could sell it, or sell it, that was the first connection on this boat matter. Q. What were you to get out of the sale of the boat? A. I was going to get my money back and the money that he owed before."

Again, he repeated the terms of the contract:

"Q. You said, I believe, you had some conversation out to the cemetery with Mr. Siverson and he said that he would endeavor to sell the boat? A. He could sell it easy and he could pay me back my money, and what I put in the boat, and the money that he owed me before, and at the same time make some himself."

Then, being examined by his own attorney, he further testified upon the subject as follows:

"Q. That he owed you prior thereto $450 on a note? A. Yes. Q. And proposed to you that if you would advance some money for him to build the boat he could work it out by his own work on this boat and you could sell the boat when it was done and get your money out, both what you advanced and what he owed before, is that right? A. Yes, sir. The Court: I didn't get your question as it concluded. Was it that the witness could sell the boat when it was finished or Mr. Siverson could sell the boat when it was finished? The Witness: That is why I did it. Q. (Mr. Forde) About this selling of the boat, was there anything definitely said or done relative to that at the first conversation? A. Mr. Siverson said he

could build the boat and sell it and get my money for me and he both to pay my money back, what I advanced him and in the former payment, and I kind of agreed to that."

Siverson, the other party to the contract, testified:

"Q. (Mr. Elliott) When was the sale of the boat first talked about between you and Mr. Twedt, when was the first conversation about the sale of the boat? Mr. Forde: I object to that as having been fully gone into on both sides. The Court: Objection overruled; exception allowed. A. Well, that was at the graveyard when I first got the promise of the first money. Q. Was it your proposition to him that you would build the boat and sell it? A. Yes; I asked him to lend me more money, that I was hard up and he could probably lend me enough so I could build a boat on speculation. . . . Q. Did you ever discuss at any other time between that and January, 1929, the matter of selling the boat with Mr. Twedt? A. Well, when I got the checks from him, it was understood, and he said always that I would sell the boat and we get the money all out. . . . Q. Did you ever have any conversation with him at any time in which he agreed to take delivery of the boat and sell it? A. No, sir."

Thus, the contract proven was one of joint enterprise between Twedt, who was to furnish the capital (which he did not fully comply with), and Siverson, who was to build the boat and sell it for the benefit of both of them—for this latter purpose, he was the agent and representative of the limited or joint partnership. The boat was completed, and Siverson sold it for himself and Twedt, according to the contract.

The allegations of the cause of action were not proven. There was a failure of proof in the entire scope and meaning of the cause of action alleged. Under the terms of the real contract, as testified to by both parties to it, of which the surety company had

666

no notice whatever, manifestly the controversy is one between Twedt and Siverson. The verdict was properly directed and judgment given in favor of the Aetna Casualty and Surety Company.

Affirmed.

TOLMAN, C. J., HOLCOMB, MILLARD, and PARKER, JJ., concur.